IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY BERANEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07 C 2314 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Terry Beranek's ("Beranek") motion for summary judgment. This matter is also before the court on Defendant's motion for summary judgment. For the reasons stated below, we deny the Defendant's motion for summary judgment and deny Beranek's motion for summary judgment. We remand the instant action.

## BACKGROUND

Beranek alleges that he filed a claim for social security benefits ("Social Security Claim") in 2003, due to several disabilities that made him unable to work

starting April 1, 2002. Beranek alleges that he had a twenty-four year career with Benjamin Moore, beginning in 1978, but that he became unable to work due to the fact that he suffers from depression, nervousness, social anxiety, panic attacks, obsessive compulsive disorder ("OCD"), and other conditions.

Beranek allegedly applied for Social Security Disability benefits with the Defendant, but this application was denied on March 10, 2003. Beranek allegedly requested a hearing on his Social Security Claim, which was held on July 13, 2004. At the hearing, the Administrative Law Judge ("ALJ") allegedly issued a decision denying benefits and finding that Beranek lacked a disability. Beranek alleges that he filed an appeal with the Appeals Council and the action was remanded for a second hearing by the ALJ, which was held on May 23, 2006 ("2006 Hearing"). On rehearing, the ALJ again issued a decision, dated September 6, 2006 ("Decision"), finding Beranek not to be disabled under the Social Security Act ("SSA") and denying disability insurance benefits to Beranek.

Beranek alleges that there were four witnesses who testified at the 2006 Hearing: (1) Beranek, (2) Beranek's mother, (3) a medical expert named Dr. Larry Kravitz ("Dr. Kravitz"), and (4) a vocational expert. Beranek allegedly testified that he dealt with depression, nervousness, and social anxiety his whole life and that these problems, combined with OCD, became so severe that it crippled his social life

and ability to work. Beranek allegedly testified that he has trouble leaving the house, sleeping, and engaging in any social activity. Beranek's mother allegedly testified that Beranek exhibited severe OCD traits, that he rarely left the confines of his room, and that he was severely depressed.

Beranek alleges that Dr. Kravitz never personally examined Beranek and testified based on his review of the medical reports in the record and based on Beranek's testimony at the 2006 Hearing. Dr. Kravitz allegedly testified that the medical reports indicated that Beranek had moderate restrictions in activities of daily living, moderate to marked restrictions in social functioning, and moderate restrictions in concentration, persistence, and pace. Dr. Kravitz allegedly posited that Beranek needed significant special considerations at work due to his impairments, but that, he retained the capacity for simple, routine tasks and that Beranek's impairments did not meet the criteria for any listed impairments ("listing"). The vocational expert allegedly testified that based on the medical expert's calculation of Beranek's residual functional capacity ("RFC"), there were approximately 13,000 jobs that Beranek could perform in the Chicagoland area.

Beranek alleges that medical reports by Dr. Michael Fields ("Dr. Fields"), Dr. Andrew Shack ("Dr. Shack"), and Dr. Jean Rudolf Quarton ("Dr. Quarton") all substantiated Beranek's claim and suggest that he is entitled to Social Security

benefits.  Beranek alleges that these reports were effectively ignored by the ALJ in reaching his determination.

Beranek brought the instant action to review the decision of the Defendant and filed the instant motion for summary judgment.  Specifically, Beranek alleges that the findings of fact by the Defendant are not supported by substantial evidence and are contrary to law and regulations.   Additionally, Beranek alleges that the findings by the ALJ are inconsistent with doctors' psychological evaluations.  The Defendant has filed a cross-motion for summary judgment.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence in the record and the ALJ applied the correct legal standards." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  The Seventh Circuit defines "[s]ubstantial evidence" as what a "reasonable mind might accept as adequate to support a conclusion."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility."  *Williams v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999).  Deference

should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)(quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). By contrast, the ALJ's legal conclusions are reviewed de novo. *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1998); *Aidinovski v. Apfel*, 27 F.Supp. 2d 1097, 1101 (N.D. Ill. 1998). However, an ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford*, 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision . . . [and] he must build an accurate and logical bridge from the evidence to his conclusion."). Further, in reviewing the decision, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

## DISCUSSION

In his motion for summary judgment, Beranek argues that the ALJ committed error reaching the conclusion that he did not have a "disability" as defined by the SSA. (P SJ Mem. Par. 28-31). Beranek seeks a judgment reversing the final decision of the Defendant denying his Disability Insurance Benefits. (P SJ Mem. 1).

I. Review Process Under the SSA

The Commissioner of the Social Security Administration employs a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)-(f), 416.920(a)-(f); *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In the first two steps, the ALJ determines "whether a claimant is not presently working, and second, whether the complained of impairment(s) are of the required duration and significantly limit the claimant's ability to work." *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1520(a)-(c), 416.920(a)-(c). In step three ("Step Three") the ALJ compares evidence of impairments with "a list of impairments presumed severe enough to preclude any gainful work." *Rice*, 384 F.3d at 365; 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment "meets or equals one of the listed impairments, the claimant qualifies for benefits and no further inquiry is necessary." *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1520(d), 416.920(d). However, if the claimant's impairment is not sufficient under step three, the court proceeds on to steps four and five ("Step Four" and "Step Five"). *Rice*, 384 F.3d at 365. In Step Four, the court determines whether the claimant's RFC, which is defined as the tasks "a claimant can still do, despite his or her limitations," *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1545(a), "will allow the claimant to pursue her past work." *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1520(e), 416.920(e). If the claimant's impairment "precludes the performance of past work, the claimant's RFC, age, education, and work experience are considered

to determine if other work exists that would accommodate the claimant. *Rice*, 384 F.3d at 365; 20 C.F.R. § 404.1520(f), 416.920(f).

In this case the ALJ specifically found that Beranek's impairments did not meet or equal any of the listed impairments and, as such he could not be considered disabled under Step Three. (AR 24). Proceeding to Steps Four and Five, the ALJ determined that Beranek is unable to perform past relevant work, but based on Beranek's RFC, other work does exist that would accommodate Beranek's disabilities. (AR 27-28). Thus, the ALJ found that Beranek should not be considered to have a "disability" as defined by the SSA. (AR 28).

Beranek alleges that the ALJ erred, both in finding that his impairments do not meet or equal a qualified listing and in finding that he has the RFC to perform medium level work, and thus has the capability to perform other jobs in the Chicagoland area.

II. Qualified Listing Analysis

Beranek first argues that the Defendant erred in finding that Beranek's impairments did not meet the listings required by statute. (P SJ Mem. Par. 14). The qualified listings are found in 20 C.F.R. Part 404, Subpart P, Appendix 1. For mental conditions such as an "affective disorder" a claimant must meet two sets of

requirements ("A Requirement" and "B Requirement") in order to satisfy the qualified listing. 20 C.F.R. Part 404, Subpart P, Appendix 1. The A Requirement necessitates that the claimant show "documented persistence" (usually a diagnosis by a physician) of certain mental disorders. *Id.* The B Requirement necessitates a showing that the diagnosed disorder manifests in "marked" restrictions or difficulties in major areas of life. *Id.* If a listing has not been met by satisfying the A Requirement and B Requirement, the petitioner may also qualify under a C Requirement, however that is not relevant to this case, as Beranek has not alleged that he qualifies under the C Requirement. *Id.*

Beranek argues that substantial evidence existed, in the form of medical reports by treating physicians, that showed that Beranek met the necessary listings under 12.04 Affective Disorders, 12.06 Anxiety Disorders, and 12.08 Personality Disorders. (P SJ Mem. Par. 14-16). Beranek specifically cites the report of Dr. Fields which indicates that Beranek meets the A Requirements and B Requirement to qualify for each of those listings. (AR 118). Dr. Fields concluded that "Beranek meets at least three of the 'B' criteria of the PRT" and that [h]is lifestyle has become extremely restrictive, his social involvements are practically nonexistent, and his capacity for consistent concentration, persistence, and pace certainly is questionable." (AR 118). In addition, Beranek notes that Dr. Shack opined that

Beranek met the A Requirement of a diagnosis for depression, anxiety, and OCD. (AR 265). Dr. Shack did not give an opinion on whether Beranek met the B Requirement to satisfy a listing for those disorders. Beranek argues that because his impairments are severe enough to meet these necessary listings, the ALJ should have found that he automatically qualified for disability benefits. (P SJ Mem. Par. 14).

The ALJ addressed the issue of whether Beranek had met one of the listings (Step Three of the review process) only summarily. (AR 24). The ALJ reached the finding of fact that: "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 24). The ALJ supported this finding of fact with only four sentences rehashing the testimony of Dr. Kravitz. (AR 24). The ALJ did not mention the underlying medical reports, on which Dr. Kravitz partially relied, some of which contradicted the conclusion reached by Dr. Kravitz. (AR 24). In particular, the ALJ failed to state what weight, if any, was given to the conclusions reached by Dr. Fields, who after a thorough examination of Beranek, along with a review of other documents, concluded that Beranek met the necessary listings to qualify for benefits under Step Three. (AR 24).

The ALJ is required to "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Scott*, 297 F.3d at 595. With respect to the issue of

whether Beranek met one of the qualified listings, the ALJ has not built such a bridge. Evidence exists in the Administrative Record contradicting the testimony of Dr. Kravitz and the ALJ gave no indication of how this evidence was considered, if at all. In his motion for summary judgment, the Defedant has attempted to use other evidence in the administrative record to support the conclusion of the ALJ, however the court must confine its review to the explanation and reasoning given by the ALJ. *Steele*, 290 F.3d at 941. The ALJ failed to properly articulate in his decision whether or not Beranek met a listing. Therefore, we remand this matter to the ALJ for further proceedings and a decision consistent with this opinion.

III. RFC Analysis

Beranek also alleges that the "[t]he ALJ erred in finding that the claimant has the residual functional capacity to perform light work." (P SJ Mem. 10). The record, however, reflects that the ALJ actually reached the finding of fact that the "claimant has the residual functional capacity to perform *medium* level work activities." (AR 25) (emphasis added). The RFC is "what an individual can still do despite his or her functional limitations and restrictions caused by his or her medically determinable physical or mental impairments." 61 Fed. Reg. 34474-01 (July 2, 1996). The RFC is "the individual's maximum remaining ability to perform sustained work on a regular

and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule and [i]t is not the least an individual can do, but the most, based on all of the information in the case record." *Id.* In Steps Four and Five of the review process, the ALJ must determine the claimant's RFC and then, based on that determination, must make a finding: (1) whether the claimant is able to perform past relevant work, and, if not, (2) whether other work exists that would accommodate the claimant. *Rice*, 384 F.3d at 365.

In this case, the ALJ concluded that Beranek was unable to perform any past relevant work. (AR 27). However, the ALJ also concluded that Beranek had the RFC to perform medium level work, and thus could not be considered disabled. (AR 25-27). As with the ALJ's discussion of whether Beranek met a qualified listing, the ALJ failed to provide appropriate explanation for the conclusion reached. Based on the Administrative Record, it is clear that there are conflicting medical reports and other evidence on the issue of the severity of Beranek's disability and the extent that his disabilities affect his RFC. While the testifying expert, Dr. Kravitz, did testify that the plaintiff retained the capacity for "simple, routine tasks," (AR 319), this testimony was neither cited nor discussed by the ALJ in support of the ALJ's finding that Beranek has an RFC to perform medium level work activities. Beranek presented evidence in the form of medical reports prepared by Dr. Fields and Dr.

Shack relating to Beranek's disability, as well as the sworn testimony of both Beranek and Beranek's mother, contradicting Dr. Kravitz's conclusion relating to Beranek's RFC. This evidence was either not discussed in the portion of the ALJ's opinion devoted to Beranek's RFC or it was merely mentioned by the ALJ and summarily disregarded without sufficient explanation. (AR 25-27). Much of the ALJ's explanation relating to his RFC determination focused on inconsistent statements made by Beranek on minor issues relating to the various examining doctors. (AR 25-26). The ALJ stated that these inconsistencies undermine the credibility of what the ALJ calls Beranek's "self-reports" of medical problems. (AR 26).

The ALJ also mentioned some of the medical reports in the record, including evaluations by Dr. Shack, Dr. Rubens, and the records of long-time treating physician, Dr. Diamond D. Dettore (which were received after the hearing). (AR 25-27). However, because the ALJ did not mention the majority of the evidence in the record and failed to address clear inconsistencies in the evidence, the ALJ's decision failed to build the necessary bridge between the evidence in the record and the conclusion reached relating to Beranek's RFC. A more thorough review and explanation of the evidence in the record is required. As such, we also remand this matter to the ALJ for further proceedings and a decision consistent with this opinion.

IV. Beranek's Credibility as a Witness

      Beranek alleges that "the ALJ erred in finding that the claimant was not a credible witness." (P SJ Mem. 9). As we discussed above, the ALJ did not properly weigh the medical evidence submitted by Beranek, but noted that Beranek's statements regarding certain aspects of his symptoms "are not entirely credible nor are they substantiated by the documentary record." (AR 27). Even if such a determination were made, this court would not generally reconsider questions of evidence relating to a witness' credibility. *Apfel*, 179 F.3d at 1071-72 (stating that courts may not substitute their judgment for the ALJ's regarding questions of credibility). In any event, we have remanded this case for further proceedings on the above issues at which time the ALJ will make the appropriate findings.

## CONCLUSION

Based on the foregoing analysis, we deny both motions for summary judgment and remand the instant action for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 17, 2007